[No. 26125. *En Banc.* October 26, 1936.]

HARRY A. DONALDSON *et al., Appellants,* v. B. H. JONES *et al., Respondents.*[1]

*Frank M. Egan, W. E. Hinderer,* and *Egan, Hinderer & Egan,* for appellants.

*N. A. Pearson* and *F. M. Reischling,* for respondents Fiorito.

MAIN, J.—This action was brought to recover damages for personal injuries and the destruction of an automobile. The cause was tried to the court and a jury, and resulted in a verdict in favor of all of the defendants. The plaintiffs moved for a new trial as against the defendants A. M. Fiorito, D. Fiorito, L. Paul Fiorito, Don Fiorito, and Dan Fiorito, copartners doing business under the name of The Northwest Construction Company, which motion was overruled, and from the judgment dismissing the action the plaintiffs appealed.

[1]Reported in 61 P. (2d) 1007.

The facts will be stated only to the extent that it appears necessary in order to present the question here for determination.

The accident out of which the litigation arose happened on a paved highway extending between the city of Kent and the town of Thomas, September 29, 1934, at about 9:20 o'clock p. m., when a truck and the automobile of the plaintiffs came in collision. The distance between Kent and Thomas is about three miles, and for a number of years there has been a paved highway between the two places. Shortly after leaving Thomas in the direction of Kent, which was to the north, this highway curved to the right.

March 30, 1934, the state contracted with the respondents to pave a highway which had been previously graded and prepared for paving, and which would eliminate the curve and make the road practically a straight line between Kent and Thomas. This paving was for a distance of about a mile. Near the north end, the highway crossed a river, at which it was necessary to construct a bridge. The contract, however, for the construction of the bridge was not awarded to the respondents, but to another party. The respondents entered upon the contract and finished all the work they were required to do on the 28th of September, 1934. On this date, the resident engineer approved the final estimate.

During the time that the work was in progress, the respondents maintained, at the south end of the new construction, a barrier upon which red lights were placed at night, and likewise at the north end. Prior to the 28th, the respondents had removed from the highway all their equipment and machinery, and nothing remained for them to do to fulfill the requirements of the contract which they had undertaken. The bridge at this time had not been completed. In order that the

south end of the pavement might accommodate local traffic, the road was opened for such traffic. At the request of the resident engineer, the respondents left one of their barriers on the east side of the pavement at the south end. This was for the purpose of indicating to traffic that the road was not open for through traffic. The engineer undertook to have this barrier maintained and the lights placed on it at night by a person in the employ of the maintenance department of the state highways. After the other barriers, which the respondents had been required to keep at both ends of the mile of road, had been removed, the engineer required the bridge contractor to place barriers across the highway to the south, and also to the north, of the bridge, in order that traffic would not drive into a pocket from either end.

The accident occurred, as above stated, shortly after nine o'clock in the evening. The truck was owned by parties who were defendants in the action, but are not parties to the appeal. The driver of the truck was proceeding north from Thomas, and when within a short distance of the barrier on the east side of the pavement, probably thirty or forty feet distant, he suddenly turned to the right and the truck collided with an automobile, owned by the appellants and driven at the time by Mr. Donaldson, which was proceeding southwest on the curved highway and on their own right-hand side of the road. Mr. and Mrs. Donaldson were both seriously injured, and their automobile was practically destroyed.

The evidence is that the barrier had been knocked down by another automobile about two hours prior to the accident, but as to whether lights had been placed on it that evening, the evidence is in direct dispute. Upon the trial, the court instructed the jury that, if they should find from the evidence that the contractors

had, sometime before the accident, finished the highway and had been relieved by the state of Washington, through its officers and agents, of the necessity of maintaining barriers and lights, the verdict should be in favor of the contractors.

Another instruction, much to the same effect, was given, which contained the statement that,

" . . . if you find that the resident engineer did relieve the contractor from the necessity of maintaining lights or barricades at the time in question, and that at said time the work was completed by the contractor and accepted by the said engineer, then I charge you that there can be no liability on behalf of the contractor and your verdict must be for the defendants Fiorito doing business as Northwest Construction Company."

The only errors assigned pertain to the giving of these two instructions, and present the question of whether the resident engineer had a right to relieve the respondents from the maintenance of the barriers and lights prior to the time that the work had been accepted and approved by the director of highways, which occurred October 5, 1934.

The specifications under which the work was performed were made a part of the contract. In each of the briefs there are set forth a number of paragraphs from the specifications, but it does not appear necessary to set them out here, because to do so would tend to obscurity rather than to clearness. It is sufficient to state that, under the contract and specifications, the work could only be accepted and approved, as complying with the requirements, by the director of highways.

In the specifications, there was a provision that the contractor should maintain barriers and lights, for the purpose of protecting the traveling public, which should meet with the approval of the resident engineer.

All of the work in connection with the contract was under this particular engineer.

There is a difference between the resident engineer opening the road for travel after it has been completed and met with his approval and the final acceptance of the work by the director of highways. The rule is that the acceptance of the work by the supervising engineer and opening the road to traffic will relieve the contractor of liability for injuries to third persons after the acceptance, because all that is required in this regard is a practical acceptance after the completion of the work, a formal acceptance not being necessary.

In *Haynes v. Norfolk Bridge & Const. Co.,* 126 Neb. 281, 253 N. W. 344, which is a case that bears a close analogy to the one now before us, it was said:

"It is a general rule that the acceptance that is required by the proprietor of the work of a contractor, in order to relieve the contractor of liability for injuries to third persons after the acceptance, is a practical acceptance after the completion of the work, a formal acceptance not being required. This rule is supported in *McCrorey v. Thomas,* 109 Va. 373; *Rengstorf v. Winston Bros. Co.,* 167 Minn., 290; *First Presbyterian Congregation v. Smith,* 163 Pa. St. 561; *Memphis Asphalt & Paving Co. v. Fleming,* 96 Ark. 442; *Read v. East Providence Fire District,* 20 R. I. 574; *Armstrong v. City of Tulsa,* 102 Okla. 49; and numerous other cases. The rule is also substantially stated in 45 C. J. 884, and in 20 R. C. L. 53, sec. 49."

Other authorities could be cited in support of the rule, but it appears to be so well settled that there is no occasion for unduly multiplying them.

In the case now before us, the resident engineer had the supervision and control of the barriers and lights during the progress of the work and until it was completed. The work being completed, he had a right to authorize and permit the contractors to remove all barriers and open the road to traffic, in the absence of

an express limitation of authority to the contrary, and there does not appear to be any such limitation in this case. It is said, however, that the engineer in charge of the work

" . . . . had no authority to relieve the contractor from the duty imposed upon him to maintain lights on the barricade 'until the road was open to traffic.' "

In this case, the only reason that the road was not open to through traffic was because the bridge contract was not completed, and this was a matter with which the respondents had nothing to do. The barrier that remained upon the east side of the pavement after the road was open to traffic related solely to the bridge contract, and not to the paving contract. If it had not been for the bridge, or if the bridge had been completed when the road contract was completed, all barriers would have been removed and traffic would have moved over the new stretch of road, even though the performance of the contract had not been formally accepted and approved by the director of highways. In this connection, the resident engineer testified:

"If this had been just a paving job clear through with no bridge there, and they had completed the paving just as they had on the 28th, there would have been no barrier put up there at all at that time. Traffic would have gone straight through, regardless of the acceptance of the highway officially or not. That is quite often the practice. The state of Washington continued to use the same barricade there that was loaned by Mr. Fiorito until November 23rd."

The fact that the respondents loaned one of their barriers to the state after they had completed their contract, in order that it might be used until the bridge was completed, does not take the case out of the rule above stated.

The judgment will be affirmed.

ALL CONCUR.