16791

NICHOLS v. CRAVEN

(78 S. E. (2d) 376)

*Messrs. Thomas & Lumpkin,* of Columbia, *and Bridges & Bridges,* of Florence, *for Appellant, E. D. Craven,*

*Messrs. Willcox, Hardee, Houck & Palmer,* of Florence, *for Appellant, George S. Nichols.*

*Messrs. Willcox, Hardee, Houck & Palmer,* of Florence, *for Respondent, George S. Nichols.*

*Messrs. John D. Nock,* of Cheraw, *and Royall & Wright,* of Florence, *for Respondents other than George S. Nichols,*

*Messrs. Willcox, Hardee, Houck & Palmer,* of Florence, *for Appellant, George S. Nichols in Reply,*

November 2, 1953.

TAYLOR, Justice.

This action was brought in the Court of Common Pleas for Florence County by George S. Nichols against McMeekin Construction Company and Standard Accident Insurance Company of Detroit, Michigan, and E. D. Craven, for injuries and property damages sustained in a collision between an automobile driven by him and one driven by Craven on U. S. Highway No. 52, near Lynches River between Florence and Lake City, South Carolina, on June 26, 1950.

Since Nichols is in the position of being both appellant and respondent, the parties will be referred to as plaintiff and defendants.

The cause of action against McMeekin and Standard Accident was based upon alleged negligence, recklessness, willfulness and wantonness of McMeekin Construction Company (Standard Accident Insurance Company of Detroit,

Michigan, being its surety for the faithful performance of its contract with the South Carolina State Highway Department), for alleged failure to provide, erect and maintain suitable barricades and sufficient lights, signals, or signs directing traffic approaching and at a point on said highway where it had been constructing a new bridge over Lynches River, and approaches thereto. It was alleged that the bridge and approaches for a distance of approximately a quarter of a mile are practically parallel with the old road and bridge, and about one hundred feet to the west thereof; that the new project joined the old highway north and south of the river, and that on or about the date of the accident the new bridge and approaches thereto had been practically completed; that barricades should have been placed and maintained where the new road entered the old highway so as to direct traffic over the new and close traffic over the old; that Nichols, on the date alleged, was driving his automobile in a northerly direction on the highway, and, as he approached the new road south of the river, the old road was barricaded and closed, and he was required to travel upon the new road and over the new bridge; that as he continued across the new bridge on the right hand side of the newly constructed northern approach thereto, Craven, driving an automobile in a southerly direction on the highway collided with plaintiff's automobile at the point where the old road and the new road came together; that there was no barricade, notice, warning or sign of any kind on the old highway north of the bridge directing traffic over the new part of the highway at the point of collision of the two vehicles or in close proximity thereto; that it was the duty of McMeekin Construction Company, in connection with the construction of said bridge and approaches thereto to provide, erect and maintain suitable barricades, lights, signals, signs, etc., and a watchman so as to properly direct traffic over the newly constructed part of the highway, and that its failure, together with the negligence of the said Craven in the operation of his automobile caused Nichols to receive severe injuries.

The defendant, Craven, answered and set up a denial of negligence on his part, a plea of contributory negligence, a counterclaim against the plaintiff, Nichols, and a cross action against the defendants, McMeekin and its surety. By way of reply to the counterclaim, plaintiff, Nichols, denied negligence.

Defendants, McMeekin and its surety, Standard Accident, filed answers in the nature of a general denial; alleged that McMeekin had completed construction of the new project, and earth graded approaches thereto, as required by its contract with the Highway Department, and had surrendered control of same to the Highway Department prior to the accident; that the Highway Department began surface treating the approaches on June 8, 1950, and completed same on July 12, 1950; therefore, the approaches and bridge were in the complete custody and control of the Highway Department during said period. There were also defenses of contributory negligence, recklessness, wilfulness and wantonness on the part of Nichols, and allegations to the effect that the collision was due to the sole negligence, recklessness, wilfulness and wantonness of Craven in the operation of his automobile.

The case came on to be heard before Honorable G. Badger Baker, the presiding Judge, and a jury on May 15, 16 and 17, 1952. At the conclusion of the testimony, the defendants, McMeekin Construction Company and Standard Accident Insurance Company, moved for the direction of a verdict in their favor, which motion was granted.

Following the presiding Judge's charge, the case was submitted to the jury and a verdict returned in favor of the plaintiff in the sum of $2,500.00 actual damages against the defendant, E. D. Craven.

Plaintiff made timely motion for a new trial against all defendants, which was marked heard and argument was presented thereon at a subsequent date. Plaintiff's motion for a new trial against the defendant, E. D. Craven, was

based upon the ground that the verdict of the jury was inadequate. Plaintiff's motion for a new trial against the defendants, McMeekin Construction Company and Standard Accident Insurance Company, questioned the ruling of the presiding Judge in directing the verdict in favor of these defendants. Argument was heard on these motions and the matter taken under advisement by the presiding Judge who thereafter, on August 27, 1952, issued his order granting the motion for a new trial as to the defendant, Craven, but denying the motion for a new trial as to the defendants, McMeekin Construction Company and Standard Accident Insurance Company.

Notice of appeal was duly given by plaintiff from the direction of verdict in favor of McMeekin Construction Company and its surety and the defendant, E. D. Craven, appeals from the order granting plaintiff a new trial as to him.

Plaintiff, Nichols, by appropriate exceptions contends: First, that the McMeekin Construction Company was negligent in failing to maintain barricades, signs, lights, signals, watchmen, etc., particularly at the northern junction of the new road with the old, thereby failing to take the necessary precautions for the protection of the traveling public; and, second, that the McMeekin Construction Company was responsible under its contract with the Highway Department for the safety of the traveling public until the project was formally accepted by the Highway Department.

Section 7.07 of the Standard Specifications provides:

"Barricades, Danger Warning and Detour Signs. The contractor shall provide, erect, maintain and finally remove all necessary barricades, suitable and sufficient red lights, danger signals and signs; provide a sufficient number of watchmen; and take all necessary precautions for the protection of the work and safety of the public. Highways closed to traffic shall be protected by the effective painted barricades of a type approved by the engineer, on which shall be placed acceptable warning and detour signs. The contractor

shall provide and maintain acceptable warning and detour signs at all closures and intersections, and along detour routes for which he is responsible, directing the traffic around the closed portion or portions of the highway so that the temporary detour route or routes shall be indicated clearly throughout its or their entire length. All barricades and obstructions shall be illuminated at night and all lights shall be kept burning from sunset until sunrise."

The contract in question provided that the McMeekin Construction Company should construct a new bridge over the Lynches River in Florence County, South Carolina, on U. S. Highway 52 and the approaches thereto but such contract did not include the paving or surface treating of said approaches as that was to be done by the Highway Department itself. Also, included in the contract was the construction of several smaller bridges south of the main bridge but they are not important in the consideration of the questions in this case.

The usual performance bond with the Standard Accident Insurance Company as surety was given by the McMeekin Construction Company. The approaches to the new bridge from the south to the point where it joins U. S. Highway 52 are a relatively short distance with a greater length along the north side and almost parallel with the old bridge for an overall distance of a quarter of a mile.

On May 20, 1950, the diary of the project engineer of the Highway Department showed that the project was "opened to traffic." On May 29, 1950, the bridge engineer, district engineer, and assistant engineer having made an inspection of the work, the project engineer wrote the McMeekin Construction Company setting forth eleven minor items related to the bridge that remained to be done before the final acceptance. On June 1, 1950, the McMeekin Construction Company had completed this list of items and the project engineer, Mr. P. E. Bradham, wrote on the original of the aforesaid letter "Completed, 6-1-50" and signed his

name. He also wrote in his diary on June 1, 1950, that the "Contractor finished all work and all clean up done." But it was not until August 3, 1950, that the Highway Department wrote the McMeekin Construction Company its formal acceptance of the project as of August 1, 1950.

After the June 1, 1950, inspection the Highway Department commenced preparations for the surface treating of the approaches to the new bridge, and the barricades which had been left by the contractor to divert traffic from the newly constructed approaches and bridge were relocated by the Highway Department so as to divert traffic from the old road to that portion of No. 52 which had recently been constructed. Mr. Phillip Willcox, the engineer in charge of surface treating these approaches for the Highway Department commenced work on June 6, 1950, and continued until July 12, 1950.

During this period, traffic was alternately diverted by the Highway Department over the two roads in order to permit the use of highway traffic to pack the new road and to permit orderly progress of the work required to complete the surface treating, the barricades being moved from one road to the other from time to time by the Highway Department as it facilitated the paving program. On June 27, 1950, the foreman under Mr. Willcox found the barricade to the old road north of the bridge knocked down which he proceeded to re-erect under orders of the Highway Department, the collision out of which this controversy arose having previously occurred at this point on June 26, 1950. The evidence further shows that the barricade was destroyed on June 24, two days prior thereto.

It is therefore apparent that the injury complained of came about between the time the McMeekin Construction Company had completed its work and the time of formal acceptance. Therefore, this appeal revolves around the question of who was responsible for the failure to safeguard the traveling public under the circumstances heretofore related. This

precise question never having been before this Court, we have resorted to the Courts of other jurisdictions in our efforts to arrive at a proper solution.

"Nature and Extent of Acceptance. The operation of the general rule that the contractor is not liable to a third person receiving injury or damage as a result of the negligent construction of the work, after the completion and acceptance thereof by the contractee or owner, does not require a formal acceptance.of the contractor's work, and the liability of the contractor will cease with a practical acceptance after completion." Annotation, 13 A. L. R. (2d) 211.

In 40 C. J. S., Highways, § 252, page 289, we find under the heading "Completion and acceptance of work":

"The liability of an independent contractor for negligence subsists as long as the road is under his charge, and he is bound to leave the highway in a reasonably safe condition for travel on completion of his work. It has been held, however, that, after completion of the work and its acceptance by the governmental body, the contractor's liability ceases and he may not be held responsible for damage thereafter occurring, since on termination of his control of the road the contractor owes no further duty to the traveling public. Liability of the contractor has been denied where the damage took place after completion and a factual acceptance of the work, but before there had been a formal acceptance."

In *Warner v. De Britton,* 1933, La. App., 151 So. 239, it was held that where a contractor was engaged in constructing a canal, under contract with parish authorities, and these authorities had commenced the construction of a bridge and taken steps to guard a highway across which the canal had been dug, the parish authorities had assumed control to the extent that the contractor was relieved from all liability for injuries received by the plaintiff when the automobile in which he was riding on such highway ran into the excavation for the canal at the place where it crossed the highway.

In *Haynes v. Norfolk Bridge & Construction Co.,* 1934, 126 Neb. 281, 253 N. W. 344, where the plaintiff's husband was killed when his automobile ran into an unguarded culvert which had been constructed by the defendant under a contract with the State Highway Department, it was held that the fact that the State Highway Engineer had inspected and designated as complete the defendant's work and had made record that its work was finished, constituted an acceptance relieving the defendant from any further duty to maintain warning signs or barriers in connection with such work. The defendant contractor completed its work at a date prior to the fatal accident, and did no further work thereafter on the culverts which in the absence of proper barriers or warning signs caused the injury. The contractor's work having been completed, the equipment was moved to another locality under the direction of the state engineer. The work was inspected by the state engineer in company with the defendant superintendent, and the state engineer designated the work as 100 per cent complete and entered on his book a record that defendant's work was finished. The Court concluded on the basis of these showings that there was an actual acceptance and this relieved the contractor from any further duty to maintain such guards, barriers, lights or warning signals beyond that date; that the burden was upon the plaintiff to establish that the contractor was yet in charge and control of the work at the time of the accident which he was unable to do.

In *Furlough v. Nash County Highway Commission,* 1928, 196 N. C. 160, 144 S. E. 693, it was held that the liability of a road construction contractor to properly guard embankments, fills, and cuts, or other dangerous portions of a road on which he was engaged in construction work, continued as long as he had such road in charge.

In *Donaldson v. Jones,* 1936, 188 Wash. 46, 61 P. (2d) 1007, the specifications of a contract for the construction of a road contained a provision that the contractor should maintain barriers and lights, for the purpose of protecting

the traveling public, which should meet with the approval of the resident engineer, and during the time of the construction, maintained a barrier upon which red lights were placed at night, but upon the completion of the work, the contractor removed from the highway all his equipment and machinery. The question was whether the resident engineer had a right to relieve the contractor from the duty to maintain the barriers and lights prior to the time the work had been formally accepted and approved by the director of highways. The Court held that the acceptance of the work by the supervising engineer and opening the road to traffic relieved the contractor from liability for injuries to third persons after the acceptance, because all that was required in this regard was a practical acceptance after the completion of the work, a formal acceptance not being necessary—the Court following the rule laid down in *Haynes v. Norfolk Bridge & Construction Co.* (Neb.), *supra*.

In *Rengstorf v. Winston Brothers Co.,* 167 Minn. 290, 208 N. W. 995, 996, the facts are somewhat similar to those of the instant case. In that case, a grading contractor had been engaged to grade a highway under a contract with the state which provided for the necessary barricades, warning signs, lights, etc. (but not to surface or complete the highway, which was to be done by another contractor after the grading contractor had finished his work), and who had completed his work, which, however, had not been formally accepted by the state at the time of the injury which was sustained while riding at nighttime thereon when his wagon fell over an embankment made by the defendant and unprotected by guard rails. The Court held that the contractor was not liable since his work was finished at the time of the accident, and the road was actually in use, with the state in possession thereof, although it had not been formally accepted, the Court saying, "That possession [of the state] and the attendant use were not enhanced or otherwise changed by the mere form of final acceptance," which took place shortly after the incident complained of.

The plaintiff, Nichols, cites *Soden v. Bennett,* 173 Kan. 142, 244 P. (2d) 1204, as authority for his position but we are of the opinion that that case is inapplicable to the facts of the instant case by reason of the fact that the injury complained of did not arise out of a condition for which the McMeekin Construction Company was responsible.

In the instant case, the approaches to the bridge had been completed and as a practical matter had been accepted by the Highway Department who exercised sole control over the approaches, signs, and barricades, removing and replacing them at will, diverting traffic alternately over the newly constructed approaches and the old highway as it saw fit. No work was required even upon the bridge itself after May 29, other than minor finishing details. The engineer in charge entered upon his records the notation that the project had been completed as of June 1. There is no showing that McMeekin Construction Company at the time of collision was in control of any portion of the project or the traffic flowing thereon but rather that the signs, barriers, etc. were placed on the old highway by the Highway Department where one was destroyed not while on the newly constructed approach but while being used on the old highway to divert traffic onto the new highway which had been completed and beyond control of the McMeekin Construction Company.

Plaintiff offered testimony to the effect that not all of the construction company's equipment had been removed at the time of the injury and that some of its employees were still actively engaged repairing the equipment which had been damaged during construction of the project. This, however, would in nowise affect the question here as neither the employer nor the equipment were being used on the project at the time and the repairs, such as welding broken forms, etc., were evidently being made to facilitate other work as there was no further use for this equipment on the project here.

For the foregoing reasons, we are of the opinion that the trial Judge did not commit error when he directed the verdict for the McMeekin Construction Company and its insurance carrier, Standard Accident Insurance Company of Detroit, Michigan.

The jury having found for plaintiff, Nichols, in the sum of $2,500.00 after a directed verdict had been granted as to McMeekin Construction Company and its insurance carrier, Nichols then moved for a new trial on the ground of inadequacy of the verdict and this motion was granted. The defendant, Craven, being able and willing to pay the verdict resisted the motion and appeals from the Order granting the motion; therefore, in this aspect of the case, the plaintiff, Nichols, appears as respondent.

"It is well settled in this state that an Order granting or refusing a new trial when based solely on an error of law is subject to review by this Court, but when the Order is based upon questions of fact, or upon both questions of law and fact, it is not appealable. *Daughty v. Northwestern R. Co.,* 92 S. C. 361, 75 S. E. 553; *Ingram v. Hines, Director General,* 126 S. C. 509, 120 S. E. 493; *Snipes v. Davis, Director General,* 131 S. C. 298, 127 S. E. 447; *Walker v. Quinn,* 134 S. C. 510, 133 S. E. 444; *King v. Western Union Tel. Co.,* 167 S. C. 500, 166 S. E. 629; *O'Barr v. Pioneer Life Ins. Co.,* 172 S. C. 72, 172 S. E. 769; *Marsh v. Pioneer-Pyramid Life Ins. Co.,* 174 S. C. 59, 176 S. E. 878; *Morrison v. South Carolina State Highway Department,* 181 S. C. 258, 187 S. E. 344. In *Marshall v. Charleston & S. Ry. Co.,* 57 S. C. 138, 35 S. E. 497, the Court said: 'The well-settled rule is that this court cannot review an order refusing or granting a new trial except for error of law, as the court is without jurisdiction to review the judgment of the circuit court on question of fact.' The following from Massey v. Adams, 3 S. C. 254, has been frequently quoted with approval: 'The only question proper for our consideration, is whether there was error of law in the order granting the new trial. If it was founded, either wholly or in part,

on a conclusion from the fact contrary to that of the jury, then according to the well established principles governing the Court in regard to appeals, in which propositions of law do not arise, we cannot interfere.' In dismissing an appeal from an Order granting a new trial, the Court in *Bowman v. Harby,* 109 S. C. 396, 96 S. E. 144, said: 'It is too plain for discussion that, under our decisions, the order is not appealable, because the new trial was not granted solely upon a question of law, but involved a consideration of the facts and the conduct of the trial.' *Sellars v. Collins,* 212 S. C. 26, 46 S. E. (2d) 176." *Turner v. Carey,* S. C., 76 S. E. (2d) 671, 673.

An examination of the order granting a new trial as to the defendant, Craven, reveals that such order was based upon the facts of the case and there being sufficient facts upon which to base such order, there is no abuse of discretion and no error of law.

For the foregoing reason we are of the opinion that all exceptions should be dismissed and it is so ordered.

BAKER, C. J., and STUKES and OXNER, JJ., concur.

FISHBURNE, J., not participating.