19979

Nathaniel SMITH, Respondent, v. FITTON AND PITTMAN, INC., Appellant

(212 S. E. (2d) 925)

*Jeter E. Rhodes, Jr. Esq.,* of *Whaley, McCutchen and Blanton,* Columbia, *for Appellant,*

*W. Ralph Garros, Esq.,* of *Garris & Garris,* Columbia, *for Respondent,*

*Jeter E. Rhodes, Jr., Esq., of Whaley, McCutchen and Blanton,* Columbia, *for Appellant,* in Reply.

March 26, 1975.

NESS, Justice:

This case involves the negligence of the defendant-appellant in failing to refill a utility pole hole and the propriety of a jury award of Twenty-five Thousand ($25,000.00) Dollars actual damages.

On September 26, 1969, the appellant pursuant to a contract with Southern Bell Telephone Company replaced a telephone pole located on property used by Charles Campbell for a combination automotive repair garage and used car lot. The old pole was removed, but admittedly appellant did not refill the remaining hole. The hole was located about one foot from a fence which enclosed the used car lot.

On the evening of the 26th, someone stole an automobile from the used car lot, breaking the fence in exit. The next afternoon Campbell and the respondent, Nathaniel Smith, were repairing the fence. At about dark Smith, backing away from the fence, stepped into the hole causing serious bodily injury.

Members of the Fitton and Pittman crew testified that they had been prepared to refill the hole, but that upon the urging of a mechanic-employee of Campbell, they decided to straddle the hole with the removed utility pole. What would have otherwise been an exposed portion of the hole was covered by placing a concrete block against the utility pole.

The respondent did not directly contradict this testimony; however, he did testify that when he fell into the hole, the day after the removal of the pole, styrofoam, a thin fiberous material, went down in the hole with him, and that the utility pole was beside the fence. Thus, it was circumstantially inferable that the appellant's employees did not straddle the hole with the old pole. Such an inference from the adduced facts was available to the jury and we can not say that such inference drawn was unreasonable and unwarranted.

Appellant challenges the sufficiency of the evidence to support the verdict. The hole was a mere foot in diameter but was six feet deep. Thus, it posed a threat to the safety of the property owner as well as users of the property. Because it was located outside of the fence enclosing the used car lot, it was certainly inferable that this area would be traversed by invitees as well as the owner.

Appellant as an independent contractor was charged with a duty of due care to leave the premises in a safe condition, that is, free from any hazards to safety which he may have created. Edward's of *Byrnes Downs v. Charleston Sheet Metal Company,* 253 S. C. 537, 172 S. E. (2d) 120 (1970); see *Blount v. McCrory Construction Company,* 254 S. C. 608, 176 S. E. (2d) 407 (1970); *Rogers v. Scyphers,* 251 S. C. 128, 161 S. E. (2d) 81 (1968). From the above recitation of the facts, we have no hesitancy holding that the issue of negligent discharge of that duty was properly submitted to the jury.

Appellant next contends that under the rationale of *Clyde v. Sumerel,* 233 S. C. 228, 104 S. E. (2d) 392 (1958), it was relieved of liability upon acceptance by Campbell's employee of the work. In *Clyde,* we held that ordinarily when a project is completed and accepted by the contracting party, the independent contractor is relieved of liability. To the extent that this doctrine has not been eroded by *Rogers, supra,* it is still viable.[1] Nevertheless, it will not afford relief to the appellant. There was no testimony that the mechanic who allegedly "accepted" the work had actual or apparent authority to do so. Furthermore, appellant has offered no authority, and we have found none, that Campbell's mechanic would have inherent agency power to accept work for replacement of a utility pole. Finally, *Clyde* dealt with termination of a contractor's liability upon acceptance, whether formal or informal, by the contracting party, who was the landowner. In the instant case Southern Bell was the contracting party. Accordingly, appellant would not be relieved under the authority of *Clyde v. Sumerel, supra.*

Appellant's position that Campbell, by not informing respondent of the danger, was chargeable with superseding and intervening negligence as a matter of law is without merit. Recent opinions of this Court have firmly established that mere negligence by a third party will not insulate the original wrongdoer from liability. *Mickle v. Blackmon,* 252 S. C. 202, 166 S. E. (2d) 173, 181 (1969) ; *Matthews v. Porter,* 239 S. C. 620, 124 S. E. (2d) 321, 324-25 (1962) ; Accord Prosser, The Law of Torts, 4th Ed., pp. 274-279; and *Gardner v. QHS, Inc.,* 448 F. (2d) 238, 244 (4th Cir. 1971).

The appellant next contends that the respondent was contributorily negligent as a matter of law. Appellant's position is bottomed on the fact that respondent

---

[1] The instant complaint is grounded in negligence and, therefore, the application of the UCC warranty provisions and extension of its protection to third parties not in contractual privity with the defendant and the resultant effect on the vitality of *Clyde v. Sumerel* is not before this Court.

was not looking where he was going in the dark. While the testimony revealed that the accident occurred "about dark" it also reflects that respondent was quite familiar with the area having traversed it on numerous previous occasions while transacting business with Campbell. See 22 A.L.R. (3d), Section 4A, page 292; Section 8, page 296. The issues raised at trial concerning respondent's contributory negligence were properly submitted to the jury and this resolution of same was not unreasonable or without support in the record.

Appellant contends that the trial judge's jury instructions did not adequately encompass their requested charge on negligence. However, we have studied the trial judge's charge to the jury and can but conclude that it fairly reflected the law involved and was substantially correct. Further, the appellant's request to charge No. 6 constituted a charge on the facts which is impermissible. Appellant's exceptions to the trial judge's charge generally reiterate the legal principles advanced by him in the assigned errors previously discussed which this Court had disposed of above. Considering appellant's assignments of error as a whole, such were not sufficient, even if correct, to seriously prejudice appellant's right to a fair trial.

Appellant's final contention that the verdict of Twenty-five Thousand ($25,000.00) Dollars actual damages was outrageously excessive or shocking to the conscience of the court is likewise without foundation. There was evidence in the record that the respondent was thirty-five per cent (35%) physically incapacitated for work and that he has continued pain, which, if believed by the jury, would not make unreasonable the amount of damages awarded to respondent even though the award may be somewhat liberal. Certainly we cannot say, given inflation and the painful nature of respondent's injuries, that the verdict was so shockingly excessive as manifestly to show that it was actuated by passion, prejudice, or partiality of the jury.

It follows from the above that we do not believe the lower court erred in refusing to grant appellant's post-trial motions.

Affirmed.

Moss, C. J., and LEWIS, BUSSEY and LITTLEJOHN, JJ., concur.

