1345

Larry STANLEY, Respondent v. B. L. MONTAGUE CO., INC., and
C. R. S. Sirrine, Inc., Appellants.

(382 S. E. (2d) 246)

Court of Appeals

*Jeter E. Rhodes, Jr.* and *Evans Taylor Barnette*, both of
*Whaley, McCutchen, Blanton & Rhodes; Stanford E. Lacy*
and *Mark S. Barrow*, both of *Collins & Lacy*, Columbia, *for
appellants.*

*F. Barron Grier, III,* and *Charles E. Carpenter, Jr.,* both
of *Richardson, Plowden, Grier & Howser,* Columbia, *for
respondent.*

Heard April 12, 1989.

Decided May 30, 1989.

SANDERS, Chief Judge:

Respondent Larry Stanley sued appellants B. L. Montague
Co. Inc. and C. R. S. Sirrine, Inc., alleging he had been in-

jured while cleaning certain machinery manufactured by Montague and designed by Sirrine for International Paper Co., Inc. Mr. Stanley alleged causes of action for strict liability, negligence and breach of warranties. Montague and Sirrine answered, generally denying the allegations of his complaint and alleging numerous other defenses. Sirrine also cross-claimed against Montague. Both Montague and Sirrine moved to amend their answers to implead International Paper as a defendant. (Sirrine moved to implead certain other defendants as well.) Montague also moved to amend its answer to allege a cross-claim against Sirrine, and to allege, as a defense, that Montague had completed its work and that its work had been accepted by International Paper. The Circuit Court denied the motions of Montague and Sirrine. We affirm as modified.

The issues presented on appeal are whether the Circuit Court erred: (1) in not allowing Montague to plead the defense of completion and acceptance; (2) in not allowing Montague and Sirrine to implead International Paper as a defendant; and (3) in not allowing Montague to cross-claim against Sirrine.

## I

Montague argues that the Circuit Court erred in not allowing it to plead the defense of completion and acceptance.

In support of its argument, Montague invokes the previously recognized general rule that "the contractor is not liable to a third person receiving injury or damage as a result of the negligent construction of the work, after the completion and acceptance thereof by the contractee or owner." *See Clyde v. Sumerel*, 233 S. C. 228, 232-33, 104 S. E. (2d) 392, 393 (1958) (stating the general rule).[1]

Principles governing the liability of contractors for injuries to third persons have followed principles governing the liability of manufacturers for injuries to persons not in privity with the manufacturers. Annot., *Negligence of Building or Construction Contractor as Ground of Liability upon*

---

[1] *See also* Annot., *Negligence of Building or Construction Contractor as Ground of Liability upon His Part for Injury or Damage to Third Person Occurring After Completion and Acceptance of the Work,* 13 A. L. R. (2d) 191 (1950) (relied on by the Court in *Clyde*).

*His Part for Injury or Damage to Third Person Occurring After Completion and Acceptance of the Work*, 58 A. L. R. (2d) 865 (1958).

The defense of lack of privity began its long slide into oblivion when Brandeis filed his brief and Cardozo wrote his opinion in *MacPherson v. Buick Motor Co.*, 217 N. Y. 382, 111 N. E. 1050 (1916). There, the Court held:

> If the nature of the thing is such that it is reasonably certain to place life and limb in peril when negligently made, it is a thing of danger. Its nature gives warning of the consequences to be expected. If to the element of danger there is added knowledge that the thing will be used by persons other than the purchaser, and used without new tests, then, *irrespective of contract*, the manufacturer of this thing of danger is under a duty to make it carefully.

*Id.* at 389, 111 N. E. at 1052 (emphasis added). Thus, the *ex contractu* principles of the nineteenth century began to give way to the *ex delicto* principles of the twentieth. Grey, *Intermediate Judicial Creativity*, Trial, Apr. 1985, at 26, 28.[2]

South Carolina has been a part of this trend. *See Salladin v. Tellis*, 247 S. C. 267, 146 S. E. (2d) 875 (1966) (approving the rule formulated in *MacPherson*); *JKT Co. v. Hardwick*, 274 S. C. 413, 417, 265 S. E. (2d) 510, 512 (1980) ("The erosion of the concept of privity has been a legal phenomenon for more than a decade, and this Court has not been reluctant to contribute to its demise."). Judge Bell has more fully explained:

> [T]he courts came to perceive that the rule of privity cannot justly apply if the defendant's conduct creates

---

[2] Chief Justice Traynor suggested a reason for the transition:

We have come a long way from *MacPherson v. Buick Motor Company*. The great expansion of a manufacturer's liability for negligence since that case marks the transition from an industrial revolution to a settled industrial society. The courts of the nineteenth century made allowance for the growing pains of industry by restricting its duty of care to the consumer.

Traynor, *The Ways and Meanings of Defective Products and Strict Liability*, 32 Tenn. L. Rev. 51, 363 (1965).

an unreasonable risk of harm to those interests which are independent of any contract. Thus, in *Salladin v. Tellis*, the South Carolina Supreme Court rejected the defense of "no privity" where a manufacturer's lack of care in fabricating a chattel created an unreasonable risk of physical harm and caused actual injury to one who used it in the manner and for the purpose for which it was supplied, even though he was not a party to a contract with the manufacturer.

Eventually, a general exception to the rule of privity emerged: where the actor's negligent conduct results in damage to the person or property of the plaintiff, the incidental fact that the conduct arises from performance of a contract does not insulate the actor from liability in tort. In such cases, privity of contract is irrelevant, because liability arises, not from agreement of the parties, but by operation of law. It springs from a duty of care, not from a promise.

*Carolina Winds Owners' Ass'n v. Joe Harden Builder, Inc.*, 297 S. C. 74, 81, 374 S. E. (2d) 897, 901-02 (Ct. App. 1988) (citations omitted).

Montague, by urging us to allow the defense of completion and acceptance, asks, in effect, that we turn back the clock and restore, at least in fundamental concept, the defense of lack of privity. We opt instead to hold the fort. To allow the defense of completion and acceptance would undermine the whole concept of products liability. Virtually every products liability suit involves a completed product which has been accepted by an intervening purchaser prior to injuring a third person. In these circumstances, the injured third person could not maintain a products liability suit against the manufacturer or designer of the product.

In support of its argument, Montague relies on *Clyde* and *Henderson v. St. Francis Community Hosp.*, 295 S. C. 441, 369 S. E. (2d) 652 (Ct. App. 1988). Both cases are readily distinguishable on their facts.

In *Clyde*, a child was crushed by a display case left outside a store. The administratrix of his estate sued the construction company which built the store. The Court held that the company was not liable because it had completed its work and its work had been accepted by the owners of the store.

In *Henderson*, the plaintiff was injured when she slipped and fell on a ball from a sweetgum tree planted near the stairway leading to a lower level of a hospital parking lot. She sued, among other defendants, a company which had designed the parking lot and had later provided landscape architectural services for the hospital. She contended that the company should have advised the hospital "of a maintenance program, on the removal of the sweetgum tree, and of an effective way for protecting the entrance to the stairway." The Court held that the company did not owe any duty to the plaintiff. In reaching this conclusion, the Court pointed out that the work had been accepted as complete by the hospital.

Neither *Clyde* nor *Henderson* was a suit against a manufacturer. Both *Clyde* and *Henderson* involved allegations of unsafe premises, not unsafe products. Thus, neither *Clyde* nor *Henderson* were products liability cases. Montague has cited no products liability case, from any jurisdiction, applying the defense of completion and acceptance, and our research discloses no such case.

Moreover, the defense of completion and acceptance was specifically repudiated by our Supreme Court in *Rogers v. Scyphers*, 251 S. C. 128, 161 S. E. (2d) 81 (1968). There, the Court said:

> [T]he entire weight of modern authority is to the effect that building contractors, under the rationale of the celebrated case of *MacPherson v. Buick Motor Co.*, are liable for injuries to, or the death of, third persons occurring after the completion of the work and acceptance by the owner, where the work is reasonably certain to endanger third persons if negligently prepared or constructed.

*Rogers*, at 132, 161 S. E. (2d) at 83 (citation omitted).[3]

---

[3] Justice Bussey called attention to a picturesque analogy:

The rule of reasonable care under the circumstances could not limit the conduct of Robinson Crusoe as he was first situated; but as soon as he saw the tracks in the sand, the rule began to have vitality. He then had notice that there might be other persons on the island; and this knowledge of their presence made it his duty as a reasonable man to use reasonable care to the end that no act of his should injure them.

*Rogers v. Scyphers*, 251 S. C. 128, 134-35, 161 S. E. (2d) 81, 84 (1968).

Even more significantly, the Court held: We have previously, in *Salladin v. Tellis,* approved the doctrine of the MacPherson case with respect to a chattel, and we can see no rational difference between the duty owed by the manufacturer of a chattel and the duty owed by the builder-vendor of a new structure.

*Id.* at 134, 161 S. E. (2d) at 84 (citation omitted). It is apparent, therefore, that the defense of completion and acceptance, like the defense of lack of privity, has fallen into disfavor in South Carolina.[4]

Furthermore, the defense of completion and acceptance is inconsistent with the statute providing that sellers of defective products are strictly liable for physical harm caused to the ultimate users of the products or to their property. *See* Sections 15-73-10 through 15-73-30, Code of Laws of South Carolina, 1976 (the rule of strict liability applies although "[t]he user or consumer has not bought the product from or entered into any contractual relation with the seller."). Nor is the defense consistent with the statute extending the warranty of sellers beyond those with whom they have a contractual relationship. *See* Section 36-2-318 ("A seller's warranty whether express or implied extends to any natural person who may be expected to use, consume or be affected by the goods and whose person or property is damaged by breach of the warranty. A seller may not exclude or limit the operation of this section.").

For these reasons, we hold that the defense of completion and acceptance is inapplicable as a matter of law.[5]

---

[4] *See* Annot., *Negligence of Building or Construction Contractor as Ground of Liability upon His Part for Injury or Damage to Third Person Occurring After Completion and Acceptance of the Work,* 58 A. L. R. (2d) 865 (1958) (tracing the erosion of the general rule of nonliability). This annotation supplemented the earlier annotation of the same title, *supra* note 1. The Court relied on the earlier annotation in *Clyde v. Sumerel,* 233 S. C. 228, 104 S. E. (2d) 392 (1958). Ten years later, the defense of completion and acceptance was repudiated in *Rogers. Henderson* unnecessarily cited *Clyde.*

[5] The Circuit Court gave no reason for not allowing Montague to plead the defense of completion and acceptance. We, nevertheless, affirm because it is clear that the defense does not apply.

## II

Montague and Sirrine argue that the Circuit Court erred in not allowing them to implead International Paper as a defendant.

The Circuit Court denied their motions to implead International Paper on two independent grounds. The Court first denied the motions on the ground that:

> [A] plaintiff injured by the wrongful act of two or more joint tortfeasors may elect either to sue each tortfeasor separately or to join them as party defendants in a single action. It is clear from the pleadings that the defendants in essence want to join under the guise of indemnification third-parties that may or may not be joint tortfeasors.

The Court denied the motions on the further ground that:

> [I]t would unduly complicate the trial of this case to add new parties since the parties sought to be added either were merely component part manufacturers or the purchaser, International Paper. There would be a very strong argument that International Paper was a statutory employer of the injured employee which would inject work[er]'s compensation into the case which is not necessary nor is it warranted under the facts.

Montague and Sirrine have excepted to the first ground, but not to the second. "An alternative ruling of a lower court that is not excepted to constitutes a basis for affirming the lower court and is not reviewable on appeal." *Moody v. McLellan*, 295 S. C. 157, 162, 367 S. E. (2d) 449, 452 (Ct. App. 1988).

Counsel for Montague argues that the second part of the order denying its motion was merely "inserted parenthetically in the order." It is clear, however, that this part of the order was intended to be a ground for denying the motion. The emphasis given the second part of the order is no different from that given the first part. The basis for denial stated in the second part of the order is a recognized ground for denying impleader. *See* 6 C. Wright & A. Miller, Federal Practice and Procedure § 1443, at 211 (1971) ("Sufficient prejudice to warrant a denial of impleader may be

present when bringing in a third party will introduce unrelated issues and unduly complicate the original suit.").

Even if Montague and Sirrine had excepted to the second ground on which the Court denied the motions, we would nevertheless affirm the decision. As we have indicated, impleader may be denied on this ground. *Id.*

For these reasons, we affirm the decision of the Circuit Court denying the motions to implead International Paper.

### III

The third issue has been resolved by stipulation of the parties that Montague may assert a cross-claim against Sirrine. Based on this stipulation, the appealed order is modified to allow the cross-claim.

Accordingly, the order of the Circuit Court is

Affirmed as modified.

SHAW, J., and LITTLEJOHN, Acting J., concur.

