605 S.E.2d 12

**Elizabeth Darlene DORRELL, Appellant,**

v.

**SOUTH CAROLINA DEPARTMENT OF TRANSPORTATION, APAC–Carolina, Inc., and APAC–Georgia, Inc., Defendants,**

**Of whom APAC–Carolina, Inc. is Respondent.**

No. 25875.

Supreme Court of South Carolina.

Heard Oct. 21, 2003.

Decided Sept. 27, 2004.

Rehearing Denied Dec. 1, 2004.

---

314

Frank J. Bryan, of Floyd Law Firm, P.C., of Surfside Beach; and J. Matthew Dove, of Dove Law Firm, of Murrells Inlet, for appellant.

Robert L. Widener, of McNair Law Firm, of Columbia; William W. Doar, Jr., of McNair Law Firm, of Georgetown; and Peter Murnaghan, of Murnaghan & Ferguson, of Tampa, FL, for respondent.

Chief Justice TOAL:

Elizabeth Darlene Dorrell (Dorrell) appeals after the circuit court granted summary judgment to respondent APAC–Carolina, Inc. (APAC). This case was certified from the court of appeals pursuant to Rule 204(b), SCACR. We reverse and remand.

## FACTUAL/PROCEDURAL BACKGROUND

Dorrell was injured in a one-car accident on April 16, 1996. Apparently a gust of wind caused Dorrell's car to veer to the right and drop off the road onto the dirt shoulder, which was eleven to twelve inches below the road surface. Due to the drop, Dorrell lost control of her car, the car rolled several times, and she was thrown from her car into a ditch twenty-five to thirty feet away. Dorrell suffered permanent injuries and incurred significant medical bills.

The road had been recently repaved pursuant to a contract between the paving company, APAC, and the South Carolina Department of Transportation (SCDOT). On April 22, 1996, six days after the accident, SCDOT issued an inspection report, accepting APAC's work and returning the highway to SCDOT's control. In its report, SCDOT stated that it had "accepted the highway back for State maintenance as of November 17, 1995."

Dorrell sued APAC and SCDOT[1] on a negligence theory. As to APAC, Dorrell alleged that APAC was negligent for the following: (1) failing to perform the contract according to its specifications; (2) creating a dangerous condition by raising the roadway to a level of eleven to twelve inches above the shoulder; (3) failing to correct the dangerous condition; (4) failing to warn motorists about the dangerous condition; (5) failing to exercise the degree of care that a reasonable and prudent road contractor would have exercised under the circumstances; (6) failing to inspect the road and detect the dangerous condition. As to SCDOT, Dorrell alleged that SCDOT was negligent for the following: (1) failing to warn motorists of the dangerous condition; (2) failing to correct the dangerous condition; and (3) failing to inspect the road upon completion of the resurfacing and detect the dangerous condition which actually and proximately caused Dorrell's injuries.

Dorrell eventually settled with SCDOT, leaving APAC as the sole defendant. APAC denied liability and subsequently filed a motion for summary judgment. In support of its motion, APAC argued that the contract did not authorize APAC to rebuild, repair, or maintain the shoulder area. Instead, the contract required only that the shoulder area, and particularly areas with surrounding vegetation, be left in a "neat and presentable condition." But because vegetation did not exist in the area where the accident occurred, APAC argued that it complied with the contract's mandate. In addition, APAC described the eleven to twelve inch resulting drop-off as a "patent and obvious defect," which SCDOT should have noticed upon inspecting the completed work. Finally, APAC argued that once SCDOT accepted the resurfacing work, APAC was no longer in control of the roadway and therefore no longer liable for injuries caused by the drop-off.

In response to APAC's motion for summary judgment, Dorrell filed the affidavit of her expert, Peter S. Parsonson, Ph.D, P.E. (Parsonson), who holds a doctorate in engineering and is a licensed professional engineer. In his affidavit, Parsonson directly contravened APAC's interpretation of the contract terms and opined that APAC was responsible for the

---

1. A third defendant, APAC–Georgia, Inc., was dismissed by stipulation.

roadway condition at the .time of the accident. Further, Parsonson described the eleven to twelve inch drop as an "intolerable and gross defect," which constituted a "well-known, clear, immediate, and compelling danger to the motoring public." In his opinion, by claiming that it was responsible only for one edge of the pavement to the other, APAC defined the scope of its responsibility under the contract too narrowly. Given the conflicting evidence concerning the scope of APAC's responsibility under the contract, the trial judge denied APAC's motion for summary judgment.

Two months before trial, APAC filed a second summary judgment motion, reiterating the arguments in its initial motion and including two additional pieces of evidence: the deposition testimony of expert Parsonson and SCDOT's responses to APAC's requests for admission. Based on this new evidence, the trial judge—who was not the same judge who heard APAC's initial motion—granted summary judgment to APAC, finding that (1) rebuilding, repairing, or maintaining the highway shoulders was not within the scope of APAC's responsibility under the contract; (2) APAC's work had been completed and accepted as of November 17, 1995; and therefore (3) SCDOT was solely responsible for the roadway and shoulders at the time of the accident. Additionally, the trial judge found that "APAC did not breach any duty to the plaintiffs which proximately caused the accident."

Dorrell appeals the granting of summary judgment, asking this Court to consider the following issues:

I.   Did the contract between SCDOT and APAC limit APAC's liability for negligent injury to third parties?

II.  Was the defense of completion and acceptance a valid legal basis for granting summary judgment?

III. Was it an abuse of discretion for the trial judge to hear APAC's renewed motion for summary judgment and use SCDOT's admissions against APAC?

## LAW/ANALYSIS

In reviewing a grant of summary judgment, this Court must find summary judgment proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), SCRCP; *Osborne*

*v. Adams,* 346 S.C. 4, 550 S.E.2d 319 (2001). In reviewing the record, the evidence must be considered in the light most favorable to the non-moving party. *Id.* (citing *Summer v. Carpenter,* 328 S.C. 36, 492 S.E.2d 55 (1997)).

## I. APAC's LIABILITY TO THIRD PARTIES

Dorrell argues that the APAC–SCDOT contract does not limit APAC's liability for negligent injury to third parties. We agree.

A tortfeasor may be liable for injury to a third party arising out of the tortfeasor's contractual relationship with another, despite the absence of privity between the tortfeasor and the third party. *Barker v. Sauls,* 289 S.C. 121, 122, 345 S.E.2d 244, 244 (1986) (citing *Terlinde v. J.F. Neely, Sr.,* 275 S.C. 395, 399, 271 S.E.2d 768, 770 (1980)). The tortfeasor's liability exists independently of the contract and rests upon the tortfeasor's duty to exercise due care. *Id.* (citing *Edward's of Byrnes Downs v. Charleston Sheet Metal Co.,* 253 S.C. 537, 542, 172 S.E.2d 120, 122 (1970)). This common law duty of due care includes the duty to avoid damage or injury to foreseeable plaintiffs. *See Terlinde,* 275 S.C. at 399, 271 S.E.2d at 770 (stating that the "key inquiry" in determining whether to impose liability is "foreseeability, not privity").

In a negligence action, a plaintiff must show that the (1) defendant owed a duty of care to the plaintiff, (2) defendant breached the duty by a negligent act or omission, (3) defendant's breach was the actual and proximate cause of the plaintiff's injury, and (4) plaintiff suffered an injury or damages. *Steinke v. South Carolina Dep't of Labor, Licensing and Reg.,* 336 S.C. 373, 387, 520 S.E.2d 142, 149 (1999) (citations omitted). The Court must determine, as a matter of law, whether the defendant owed a duty of care to the plaintiff. *Id.*

In the present case, we hold that APAC owed a duty of care to the plaintiff, Dorrell, based on (1) the contractual relationship between APAC and SCDOT and (2) a common law duty of care.

APAC's broad duty to the traveling public is established in at least two separate provisions of the contract. First, the

section of the contract titled "Required Contract Provisions Federal–Aid Construction Contracts" under the heading "Safety: Accident Prevention" states, in part, the following:

> The contractor shall provide all safeguards, safety devices and protective equipment and take any other needed actions as it determines ... to be reasonably necessary to protect the life and health of employees on the job and the safety of the public....

Second, the Red Book,[2] which is part of the contract, includes the following mandate:

> **107.09  Public Convenience and Safety.**  The Contractor shall at all times conduct work in such a manner as to provide for and insure the safety and convenience of the traveling public....

We also note that under the contract, the work was to "be done in accordance with the Specifications and in a good and workmanlike manner."  Therefore, based on the plain language of the contract, APAC had a duty to provide for the safety of the traveling public and to perform the work in a "workmanlike manner."  This duty arises out of APAC's contractual relationship with SCDOT, and the absence of privity between APAC and motorists such as Dorrell does not eliminate this duty.

In addition to its duties under the contract, APAC owed a common law duty to exercise due care, which existed independently of the contract with SCDOT. *See Kennedy v. Columbia Lumber and Mfg. Co.,* 299 S.C. 335, 346, 384 S.E.2d 730, 737 (1989) (finding a homebuilder owes a legal duty "to refrain from constructing housing that he knows or should know will pose serious risks of physical harm to foreseeable parties"); *Smith v. Fitton and Pittman, Inc.,* 264 S.C. 129, 133, 212 S.E.2d 925, 926 (1975) (finding that an independent contractor had a duty of care to leave the premises in a safe condition, free from any hazards to safety that he may have created); *Rogers v. Scyphers,* 251 S.C. 128, 133, 161 S.E.2d 81, 84 (1968)

---

**2.** "Red Book" is the common name for the "South Carolina State Highway Department Standard Specifications for Highway Construction," which is typically incorporated into highway construction contracts.  The 1986 edition of the Red Book was part of the contract in this case.

(finding a building contractor owed a duty of reasonable care that extended to homebuyers and members of the buyer's family); *McKissick v. J.F. Cleckley & Co.*, 325 S.C. 327, 345, 479 S.E.2d 67, 76 (Ct.App.1996) (stating that it was proper for the trial judge to charge the jury with the elements of common law negligence to determine whether a paving company negligently performed its work, indicating that the paving company owed a duty of care based in common law); *St. Clair v. B.L. Paving Co.*, 270 Pa.Super. 277, 411 A.2d 525, 526 (1979) (finding that a paving company, which left a road surface six inches about the shoulder, "owed a duty to third persons over and above compliance with the contract provisions"). This duty of care included, at minimum, a duty to pave the road in a manner that provided for the safety of the traveling public, including Dorrell.

Moreover, at oral argument before this Court, APAC's counsel explained that, in the area where the accident occurred, the road surface was already nine inches above the shoulder. Knowing this, APAC proceeded to lay the asphalt, adding another three inches, and increasing the drop to approximately twelve inches. These facts alone create a jury question as to whether APAC breached its duty of care.

Accordingly, we hold that the APAC–SCDOT contract did not limit APAC's liability for negligent injury to third parties. Like all motorists that traveled the stretch of highway recently repaved by APAC, Dorrell was a foreseeable plaintiff, and APAC's duties to Dorrell stemmed from both the APAC–SCDOT contract and the common law.

## II. COMPLETION AND ACCEPTANCE

■ Dorrell argues that the completion and· acceptance defense was not a valid legal basis for granting summary judgment. We agree.

■ Historically, this Court has found that a contractor is not liable to third parties who have been injured as a result of negligent construction after the work has been completed and accepted by the other party to the contract or the owner. *Clyde v. Sumerel*, 233 S.C. 228, 232–33, 104 S.E.2d 392, 393 (1958); *see also Nichols v. Craven*, 224 S.C. 244, 78 S.E.2d 376 (1953) (holding that a paving company was not liable for failing

to place appropriate signs and barricades at construction site once the paving company's work was completed and accepted and the highway department regained sole responsibility for traffic flow). Under this basic rule of tort law, which is commonly referred to as the "completed and accepted rule" or "acceptance rule," a contractor's liability ceases upon a showing that the completed work has been practically, not necessarily formally, accepted. *Id.*

But as early as 1968, the completion and acceptance defense began to fall out of favor in South Carolina. In *Rogers v. Scyphers,* this Court refused to allow a building contractor to use the defense to avoid liability for an injury caused when the plaintiff fell on a negligently constructed stairway. 251 S.C. at 133, 161 S.E.2d at 84. The Court stated:

> the entire weight of modern authority is to the effect that building contractors ... are liable for injuries to, or the death of, third persons occurring after the completion of the work and acceptance by the owner, where the work is reasonably certain to endanger third persons if negligently prepared or constructed.

251 S.C. at 132, 161 S.E.2d at 83. Moreover, the Court noted that "we see no rational difference between the duty owed by the manufacturer of a chattel and the duty owed by the builder-vendor of a new structure." *Id.* at 134, 161 S.E.2d at 84. Accordingly, "there was a duty on the defendants as builders to use reasonable care in the construction of the home to avoid unreasonable risk and danger to those who would normally occupy it...." *Id.* Therefore, the Court held that the defendants' motion to dismiss was properly overruled.[3] *Id.* at 137, 161 S.E.2d at 85.

Later, in 1975, this Court affirmed judgment for a person injured from falling into a six-foot-deep hole left by a contractor for the telephone company, who had removed a telephone pole earlier that day. *Smith v. Fitton and Pittman, Inc.,* 264 S.C. 129, 133, 212 S.E.2d 925, 926 (1975). Because the contractor had a duty of care to leave the premises in a safe

---

3. In so holding, the Court "assumed that the defect in the stairway was a latent, concealed one, unknown to plaintiff or her husband prior to plaintiff's injury...." *Id.*

condition, the Court held that the issue of negligence was properly submitted to the jury. *Id.*

After affirming judgment for the injured plaintiff, the Court addressed the issue of whether the contractor could be relieved of liability based on the theory that the work had been completed and accepted. The Court explained that "[t]o the extent that this doctrine has not been eroded by *Rogers,* it is still viable." *Id.* at 134, 212 S.E.2d at 926; *see also Henderson v. St. Francis Community Hosp.,* 295 S.C. 441, 369 S.E.2d 652 (Ct.App.1988), *reversed on other grounds,* 303 S.C. 177, 399 S.E.2d 767 (1990) (holding that the designer of a parking lot was not liable to a plaintiff who fell on a sweetgum ball in the lot, given that the lot was designed sixteen years before the fall and the defects were neither latent nor concealed). Though viable, the Court found that the doctrine was not available as a defense in this case because the person who "accepted" the work did not have the "actual or apparent authority to do so." *Id.* Apparently the contractors had planned to refill the hole, but an employee from the business occupying the property told the contractors to straddle the hole with the removed pole instead. The Court found the employee's instruction did not constitute acceptance, and the telephone company, as the contracting party, was the appropriate person to accept the completed work. Therefore, the doctrine did not relieve the contractor of liability. *Id.* at 134, 212 S.E.2d at 927.

Although *Smith* suggested that the completion and acceptance doctrine, though eroded, remained viable, South Carolina courts have continued to limit its application. For example, the South Carolina Court of Appeals has explicitly refused to apply the doctrine in products liability cases, finding that the application of the doctrine "would undermine the whole concept of products liability." *Stanley v. Montague Co., Inc.,* 299 S.C. 51, 54, 382 S.E.2d 246, 248 (Ct.App.1989). In addition to finding that the doctrine did not apply in the products context, the court in *Stanley* addressed the doctrine's overall demise. The court noted that "[p]rinciples governing the liability of contractors for injuries to third parties have followed principles governing the liability of manufacturers for injuries to persons not in privity with the manufacturers." *Id.* at 52, 382 S.E.2d at 247. In fact, the court read *Rogers v.*

*Scyphers* as a case that "specifically repudiated" the doctrine. *Id.* at 55, 382 S.E.2d at 248. Consequently, the *Stanley* court concluded, "the defense of completion and acceptance, like the defense of lack of privity, has fallen into disfavor in South Carolina." *Id.* at 56, 382 S.E.2d at 249.

South Carolina has not been alone in disfavoring the completion and acceptance doctrine.

> As late as the 1950s, the majority of jurisdictions adhered to the "completed and accepted rule." Since then, the "completed and accepted rule" has been severely criticized and repudiated in most states and is now the minority rule while the "modern rule" has become the majority rule.

Emmanuel S. Tipon, *Modern Status of Rules Regarding Tort Liability of Building or Construction Contractor for Injury or Damage to Third Person Occurring After Completion and Acceptance of Work; "Foreseeability" or "Modern" Rule,* 75 A.L.R.5th 413, 437 (2000).[4] The modern rule, or "foreseeability doctrine," may be stated in the following way:

> A building or construction contractor is liable for injury or damage to a third person even after completion of the work and its acceptance by the owner where it was reasonably foreseeable that a third person would be injured by such work on account of the contractor's negligence or failure to disclose a dangerous condition known to such contractor.

*Id.* at 436. The rule has been applied in multiple contexts, including cases involving the construction of streets and highways. *Id.* at 534–35; *see also Louk v. Isuzu Motors, Inc.,* 198 W.Va. 250, 479 S.E.2d 911, 921 (1996) (a highway engineer may be held liable for negligence even after the highway plan or design has been accepted and the highway constructed according to the plan); *McFadden v. Ten–T Corp.,* 529 So.2d 192, 200 (Ala.1988) (paving contractor may be liable for creating a hazardous condition during resurfacing and widening of highway several months after project completed and accepted by highway department); *Johnson v. Oman Constr. Co., Inc.,* 519 S.W.2d 782, 788 (Tenn.1975) (an independent contractor who left a barricade—which was not striped, painted, or

---

4. We note that this A.L.R. section supersedes the section relied upon by the Court in *Clyde v. Sumerel* and *Nichols v. Craven.*

illuminated—on a highway may be held liable for negligence even after project completed and accepted).

The modern view, rejecting the completion and acceptance doctrine, is reflected in the Restatement (Second) of Torts as well:

> One who on behalf of the possessor of land erects a structure or creates any other condition thereon is subject to liability to others upon or outside of the land for physical harm caused to them by the dangerous character of the structure or condition after his work has been accepted by the possessor, under the same rules as those determining the liability of one who as manufacturer or independent contractor makes a chattel for the use of others.

*Restatement (Second) of Torts,* § 385 (1965).

South Carolina cases that have considered and rejected the application of the completion and acceptance doctrine have incorporated foreseeability of harm in the analysis. For example, in *Smith v. Fitton,* the Court explained that given the location of the six-foot-deep hole left by the contractor who removed the telephone pole, "it was certainly inferable that this area would be traversed by invitees as well as the owner." 264 S.C. at 133, 212 S.E.2d at 926. Additionally, in *Rogers v. Scyphers,* the Court stated that contractors are liable, even after completion and acceptance of the work, "where the work is reasonably certain to endanger third persons if negligently prepared or constructed." 251 S.C. at 132, 161 S.E.2d at 83; *see also Prosser and Keeton on Torts* § 104A, 723 (5th ed. 1984) (citing *Rogers v. Scyphers* and stating "[i]t is now the almost universal rule that the contractor is liable to all those who may foreseeably be injured by the structure, not only when he fails to disclose dangerous conditions known to him, but also when the work is negligently done.").

■ We join the majority of jurisdictions in deciding that a contractor's duty of care is not extinguished upon the completion and acceptance of the contractor's work. Liability should be governed by the same principles that govern ordinary negligence actions, and we see no reason why paving contractors should be treated differently from building contractors and product manufacturers.

Therefore, in light of *Rogers* and its progeny, the completion and acceptance defense was an improper legal basis upon

which to grant summary judgment. APAC cannot escape liability simply by completing its work and having it accepted by SCDOT. APAC had a duty of care that extended above and beyond compliance with the contract, and whether APAC breached that duty of care is a question of fact that must be decided by a jury. Moreover, it is for a jury to decide whether Dorrell's injury was foreseeable. Therefore, the trial court's decision granting summary judgment is reversed.

### III. ABUSE OF DISCRETION

■ Dorrell argues that the trial judge abused his discretion by (1) hearing APAC's renewed motion for summary judgment and (2) using SCDOT's admissions against APAC. We disagree.

■ The trial judge had the discretionary authority to hear APAC's renewed motion for summary judgment. That a different trial judge previously denied the motion did not preclude APAC from renewing its motion once new evidence came to light. *See Ballenger v. Bowen,* 313 S.C. 476, 477, 443 S.E.2d 379, 380 (1994) (citations omitted) (finding that a denial of a motion for summary judgment does not affect the merits of the case and simply indicates that the case should proceed to trial). Further, "if the first motion for summary judgment is unsuccessful the court has the power to permit a second motion for summary judgment prior to trial." *Croswell Enter., Inc. v. Arnold,* 309 S.C. 276, 279, 422 S.E.2d 157, 159 (Ct.App.1992).

As to SCDOT's admissions, the trial judge had the discretion to consider the impact of these admissions just as he would any other evidence. Moreover, the trial judge had the discretion to allow such evidence to be admitted outside of the scheduling order. Accordingly, the trial judge did not abuse his discretion.

### CONCLUSION

Based on the foregoing analysis, we reverse the order granting summary judgment and remand this case for a jury trial in accordance with this opinion.

MOORE, WALLER, BURNETT and PLEICONES, JJ., concur.