611 S.E.2d 235

**ROCK HILL TELEPHONE COMPANY, INC., Plaintiff,**

v.

**GLOBE COMMUNICATIONS, INC., Defendant.**

No. 25952.

Supreme Court of South Carolina.

Heard March 2, 2004.
Decided March 21, 2005.

386

Robert A. McKenzie and Gary H. Johnson, II, both of McDonald, McKenzie, Rubin, Miller & Lybrand, of Columbia, for plaintiff.

Kenneth R. Raynor, of Templeton & Raynor, of Charlotte, for defendant.

Chief Justice TOAL.

Pursuant to Rule 228, SCACR, we accepted the following questions on certification from the United States District Court for the District of South Carolina:

I. Is the relationship between a utility holding a construction permit from the South Carolina Department of Transportation (DOT) and a subcontractor hired by the utility's independent contractor a "special relationship," allowing for a claim of equitable indemnity by the utility against the subcontractor?

II. Does the utility have a nondelegable duty that makes it vicariously liable for the subcontractor's negligence?

We answer both questions in the negative.

## FACTUAL/PROCEDURAL BACKGROUND

Rock Hill Telephone Company (utility) received a permit from the DOT to install an underground cable along a highway. The utility hired an independent contractor to complete the work. In turn, the independent contractor subcontracted a portion of the work to Globe Communications (subcontractor).

One evening, a car struck the subcontractor's backhoe. The driver of the car was severely injured, and she sued the utility and the subcontractor.[1] The utility cross-claimed against the subcontractor on a theory of equitable indemnification. After discovery and mediation, the utility settled with the driver for $300,000 and dismissed its indemnity action against the subcontractor without prejudice. The subcontractor eventually settled with the driver for $1,500,000.

The utility then sued the subcontractor—the action currently pending in federal court—based on a theory of equitable indemnification, seeking to recover the $300,000 paid to the driver in settlement.

## LAW/ANALYSIS

### I. SPECIAL RELATIONSHIP

 .The utility argues that it has a "special relationship" with the subcontractor supporting a claim for equitable indemnification. We disagree.

---

1. It is unclear as to why the driver did not also sue the independent contractor hired by the utility.

██ There are two forms of indemnity: contractual indemnity and indemnity implied in law, or "equitable indemnity." James C. Gray, Jr. and Lisa D. Catt, *The Law of Indemnity in South Carolina,* 41 S.C. L.Rev. 603, 604 (1990). Contractual indemnity involves a transfer of risk for consideration, and the contract itself establishes the relationship between the parties. *Id.* Equitable indemnity, on the other hand, "is based upon the specific relation of the indemnitee to the indemnitor in dealing with a third party." *Id.*

██ In general, indemnity may be defined as a "form of compensation in which a first party is liable to pay a second party for a loss or damage the second party incurs to a third party." *First Gen. Servs. of Charleston, Inc. v. Miller,* 314 S.C. 439, 442, 445 S.E.2d 446, 449 (1994) (quoting *Town of Winnsboro v. Wiedeman–Singleton, Inc.,* 303 S.C. 52, 398 S.E.2d 500 (Ct.App.1990), *aff'd,* 307 S.C. 128, 414 S.E.2d 118 (1992)). The right to indemnity arises by operation of law "in cases of imputed fault or where some special relationship exists between the first and second parties." *Id.* In other words,

> a right of indemnity exists whenever the relation between the parties is such that either in law or in equity there is an obligation on one party to indemnify the other, as where one person is exposed to liability by the wrongful act of another in which he does not join.[2]

*Stuck v. Pioneer Logging Mach., Inc.,* 279 S.C. 22, 24, 301 S.E.2d 552, 553 (1983) (citations omitted). We have held that the relationship between a contractor and a subcontractor supports a claim for equitable indemnification. *First Gen. Servs.,* 314 S.C. at 442, 445 S.E.2d at 448; *Town of Winnsboro,* 307 S.C. at 131, 414 S.E.2d at 120.

---

**2.** In general, there is no right to indemnity between joint tortfeasors. *Atl. Coast Line R.R. Co. v. Whetstone,* 243 S.C. 61, 70, 132 S.E.2d 172, 176 (1963). In the underlying case, both Rock Hill and Globe settled with the driver before liability could be determined. Because there is no evidence in the record that Rock Hill was adjudged to be without fault, we are unwilling to recognize a right of indemnity on this basis as well. *See Vermeer Carolina's, Inc. v. Wood/Chuck Chipper Corp.,* 336 S.C. 53, 63, 518 S.E.2d 301, 307 (Ct.App.1999) (holding that the most important requirement for the finding of equitable indemnity is that the party seeking to be indemnified *is adjudged without fault* and the indemnifying party is the one at fault).

In the present case, however, the relationship between the utility and the subcontractor is an attenuated one. The utility hired an independent contractor to install an underground communications line. The contractor, in turn, hired a subcontractor to perform part of the work. Given these facts, we find that the subcontractor is merely a remote or distant independent contractor, and therefore does not have a special relationship with the utility as contemplated under our jurisprudence.[3]

Accordingly, the answer to the first certified question is no.

## II. Vicarious Liability

The utility argues, in the alternative, that it has a nondelegable duty that makes it vicariously liable for the subcontractor's negligence. We disagree.

The general rule is that an employer is not vicariously liable for the negligent acts of an independent contractor. *Duane v. Presley Constr. Co., Inc.*, 270 S.C. 682, 683, 244 S.E.2d 509, 510 (1978). An exception to the general rule is that "[a] person who delegates to an independent contractor an absolute duty owed to another person remains liable for the negligence of the independent contractor just as if the independent contractor were an employee." *Durkin v. Hansen*, 313 S.C. 343, 347, 437 S.E.2d 550, 552–53 (Ct.App.1993) (citing 57 C.J.S. *Master and Servant*, § 591 (1948)). This Court has recently described the exception—the nondelegable duty doctrine—and its legal consequences, in the following way:

[a] person may delegate a *duty* to an independent contractor, but if the independent contractor breaches that duty by acting negligently or improperly, the delegating person remains *liable* for that breach. It actually is the liability,

---

3. Unlike the dissent, we find that there must be some kind of relationship between the parties beyond the relationship established by virtue of one party alleging that he was sued because of another party's wrongdoing. *See, e.g., First Gen. Serv.*, 314 S.C. at 443, 445 S.E.2d at 448 (holding relationship between contractor and subcontractor supports a claim of equitable indemnification); *Stuck*, 279 S.C. at 24, 301 S.E.2d at 553 (holding purchaser of defective vehicle was entitled to indemnification from seller); *Addy v. Bolton*, 257 S.C. 28, 33, 183 S.E.2d 708, 709 (1971) (holding landlord entitled to indemnification from general contractor for damage caused to tenant's property).

not the duty, that is not delegable. The party which owes the nondelegable duty is vicariously liable for negligent acts of the independent contractor.

*Simmons v. Tuomey Reg'l Med. Ctr.*, 341 S.C. 32, 42, 533 S.E.2d 312, 317 (2000).

Moreover, this Court has identified several situations in which the nondelegable duty doctrine applies:

An employer has a nondelegable duty to employees to provide a reasonably safe work place and suitable tools, and remains vicariously liable for injuries caused by unsafe activities or tools under the employer's control.

A landlord who undertakes repair of his property by use of a contractor has a nondelegable duty to see that the repair is done properly.

A common carrier has a nondelegable duty to ensure that cargo is properly loaded and secured, and remains vicariously liable for injuries caused by an unsecured load.

A bail bondsman has a nondelegable duty to supervise the work of his employees, and remains vicariously liable for injuries caused by those employees.

A municipality has a nondelegable duty to provide safe streets even when maintenance is undertaken by the state Highway Department, and remains vicariously liable for injuries caused by defective repairs.

*Osborne v. Adams*, 346 S.C. 4, 12, 550 S.E.2d 319, 323–24 (2001); *see also Simmons*, 341 S.C. at 50, 533 S.E.2d at 323 (holding that a hospital owes a nondelegable duty to render competent service to its emergency room patients).

In the present case, the utility contends that it had a nondelegable duty to perform the work in a safe manner.[4] This duty, the utility argues, stems from the language in the DOT permit and South Carolina statutory and regulatory law.[5]

---

4. Although this argument seems counterintuitive, it is necessary for the utility to establish that it would have initially been liable for the subcontractor's negligence. *See First Gen. Servs.*, 314 S.C. at 442, 445 S.E.2d at 449 (the right to indemnity arises by operation of law "in cases of *imputed fault* or where some special relationship exists between the first and second parties").

5. We respectfully find the dissent's analysis of this issue rests on facts that are not part of the record. Therefore, we analyze this issue based

The DOT permit provides, in relevant part, that the utility agrees "to assume any and all liability [the DOT] might otherwise have in connection with accidents or injuries to persons ... [and] agrees to indemnify [the DOT] for any liability incurred." In addition, statutory law provides that telephone companies may lay telephone lines if "such line is constructed so as not to endanger the safety of persons or interfere with the use of such highways or public roads." S.C.Code Ann. § 58–9–2020 (1976). Finally, regulatory law provides that "[e]ach *utility shall exercise reasonable care* to reduce the hazards to which its employees, its customers and the general public may be subjected." 26 S.C.Code Ann. Regs. 103–671 (1976) (emphasis added).

We hold that the provisions cited by the utility do not impose a nondelegable duty. First, the terms in the permit are enforceable only as between the DOT and the utility, not the utility and a remote independent contractor. Second, the statute and the regulation impose a duty of reasonable care, not an absolute, nondelegable duty.

Therefore, because we find that the utility did not owe a nondelegable duty, the answer to the second certified question is no.

## CONCLUSION

Because we find that (1) the relationship between the utility and a subcontractor hired by the utility's independent contractor is not a "special relationship," and that (2) the utility does not have a nondelegable duty making it vicariously liable for the subcontractor's negligence, we answer both certified questions in the negative.

MOORE, WALLER, JJ., and acting Justice MARK H. WESTBROOK, concur.

PLEICONES, J, dissenting in a separate opinion.

solely on the language in the DOT permit and the statutory law identified by Rock Hill as the source of its alleged nondelegable duty.

Justice PLEICONES.

I write separately because I believe that Rock Hill is entitled to seek equitable indemnification from Globe, the negligent entity. As explained below, I reach this conclusion by examining the facts presented to us.

The holder of a public franchise is subject to special liability rules, similar to those imposed upon common carriers. The Restatement (2nd) of Torts § 428 states the rule this way:

> An individual or corporation carrying on an activity which can lawfully be carried on only under a franchise granted by a public authority and which involves an unreasonable risk of harm to others, is subject to liability for physical harm caused to others by the negligence of a contractor employed to do work in carrying on the activity.

The comments to this section make clear that the utility is liable to a person injured by the negligence of an independent contractor carrying on the exclusive business of that utility which involves an unreasonable risk of harm, but is not liable for the contractor's negligence in performing ordinary construction. The critical question here, then, is whether Globe was doing unreasonably dangerous work that only the holder of a franchise could perform when Ms. Smith was injured.

The facts certified to us are that Ms. Smith was injured when she struck a tractor/backhoe belonging to Globe. At the time of the accident, Globe was installing underground communications lines along a state highway pursuant to a permit issued to Rock Hill. It is well established that the construction of transmission lines is an integral part of a utility's business. *See e.g., Snyder v. Southern Calif. Edison Co.,* 44 Cal.2d 793, 285 P.2d 912 (1955); *compare, e.g. Reith v. General Tel. Co. of Illinois,* 22 Ill.App.3d 337, 317 N.E.2d 369 (1974) (defendant utility has nondelegable duty to take safety precautions around excavation site constructed pursuant to franchise and state permit). It is the utility's nondelegable duty to insure that transmission lines are safely and properly installed, and it matters not whether the source of this duty is said to be the franchise agreement, statutes, or the common law. *Snyder, supra.*

The next question is whether equity will require the negligent party, Globe, to indemnify Rock Hill.

[A] right to indemnity exists whenever the relationship between the parties is such that either in law or equity there is an obligation on one party to indemnify the other, **as where one person is exposed to liability by the wrongful act of another in which he does not join.**

*Stuck v. Pioneer Logging Mach. Inc.*, 279 S.C. 22, 24, 301 S.E.2d 552, 553 (1983) (emphasis supplied).

Unlike the majority, I find the attenuated relationship between Rock Hill and Globe weighs in favor of equitable indemnification rather than against it. Rock Hill employed an independent contractor, which in turn chose the negligent subcontractor. The majority acknowledges that the independent contractor here would be entitled to indemnity, but denies that relief to Rock Hill, which had absolutely nothing to do with the selection of Globe.

In my opinion, since Rock Hill did not join in Globe's negligent act, but is liable as the result of its franchise and its DOT permit, I would find Rock Hill entitled to equitable indemnity.