757 S.E.2d 394

**George M. LEE, III, and Elizabeth Sims, Plaintiffs,**

**Of whom George M. Lee, III is the Appellant,**

**v.**

**The UNIVERSITY OF SOUTH CAROLINA and The University of South Carolina Gamecock Club, Respondents.**

Appellate Case No. 2012–212567.

No. 27372.

Supreme Court of South Carolina.

Heard Nov. 7, 2013.
Decided April 2, 2014.
Rehearing Denied May 7, 2014.

Mark W. Hardee, of The Hardee Law Firm, of Columbia, for Appellant.

Andrew F. Lindemann, William H. Davidson, II, and Joel S. Hughes, all of Davidson & Lindemann, P.A., of Columbia, for Respondents.

Justice KITTREDGE.

This case involves an agreement between Respondents, the University of South Carolina (University) and the University Gamecock Club (Gamecock Club), and Appellant George M. Lee, III. In exchange for Appellant purchasing a $100,000 life insurance policy and naming the University the sole, irrevocable beneficiary of the policy, Appellant was given the "opportunity to purchase tickets" for his lifetime to University football and basketball games. Years later, the University instituted a program that required all Gamecock Club members, which included Appellant, to pay a seat license fee as a prerequisite for purchasing season tickets. Believing that the University could not require him to pay additional consideration for the opportunity to purchase tickets without violating the agreement, Appellant brought a declaratory judgment action. The trial court entered judgment for the University and the Gamecock Club, finding that Appellant was not deprived of the opportunity to purchase season tickets when the University instituted the seat license fees. We reverse.

# I.

George M. Lee, III, has been a member of the Gamecock Club for many years. Prior to 1990, Lee was a member at the Full Scholarship level, affording him the opportunity to purchase tickets to University home athletic events. In 1990, Lee took advantage of an opportunity offered by the Gamecock Club in order to elevate his membership to the Lifetime Full Scholarship level, which would ensure preferred seating assignments at basketball and football games were protected.[1] The Gamecock Club presented Lee with two options: Lee could make a one-time donation of $100,000 to the Gamecock Club or he could take out a life insurance policy in the amount of $100,000 with the University as the sole, irrevocable beneficiary. Lee chose the latter option.

On March 9, 1990, Lee entered into a Memorandum of Agreement (Agreement) with the Gamecock Club. The Agreement provided that Lee would "irrevocably assign and contribute to the Gamecock Club the face amount of a whole life insurance policy valued at a minimum $100,000 with an A+ top 25 company as rated by the 'Best Rating System.'" The Agreement further provided that Lee would pay the annual premiums on the policy "of a sum not less than $1,000 . . . for a period of eight (8) years until the policy is paid up[,] at which time the Gamecock Club will own the paid up policy." In exchange, Lee was "designated as a Lifetime Scholarship Donor for the eight (8) years [he paid] on the policy."

The Agreement contained an attachment that listed the benefits Lee would receive.[2] The Agreement further stated

---

1. Although it was under no obligation to do so, the Gamecock Club accommodated Lee's request to take over his father's seats after his father's death in 1990.

2. Lee testified that one of the most attractive benefits of the Agreement was that, while a Lifetime Full Scholarship member, he had the right to designate an heir for his tickets—an option not available to most Gamecock Club members. Lee was also entitled to the following benefits under the Agreement: (1) four season football tickets in the "best available" location; (2) four additional season football tickets; (3) assigned reserved parking for football games; (4) second priority on away and bowl games; (5) four season basketball tickets in the "best available" location; (6) assigned parking at the Carolina Coliseum; and (7) second priority on away and tournament basketball tickets.

that: "In accordance with said attachment, George M. Lee, III[,] will have the *opportunity to purchase tickets* entitled to the Gamecock Level or membership presently held." (emphasis added).

At the end of the eight-year period, the Gamecock Club notified Lee that, due to "optimistic interest rate projections" in 1990 that never materialized, the Gamecock Club had not "realize[d] the needed cash value to insure the intended $100,000 face value" of the policy. Thus, the Gamecock Club offered Lee a new agreement with three options: (1) make no further payments to the Gamecock Club and revert back to Full Scholarship level; (2) contribute $500 or more to the Gamecock Club in order to remain a Lifetime Full Scholarship member; or (3) "[c]ontinue [paying] the current premium until such time as the intended face value of the policy is realized." Lee chose the second option and began paying $500 a year to maintain his Lifetime Full Scholarship status and the accompanying benefits.

In 2008, the University considered several revenue-enhancing alternatives, including raising ticket prices. Following the lead of other universities, the University rejected the idea of raising ticket prices and decided to institute what it called the Yearly Equitable Seating (YES) program. The YES program required all Gamecock Club members, regardless of membership level, to pay a seat license fee each year for the opportunity to purchase tickets and maintain their current seats.[3] To that end, Lee was required to pay $325 per year for each of his eight seats in order to maintain his seating at football games. Lee has paid this license fee under protest since the institution of the YES program.

## II.

■ Lee and Elizabeth Sims [4] filed a declaratory judgment action to determine whether they were entitled to purchase season tickets without paying the seat license fees. The trial

---

3. The University presented the YES program as an advantage, for it asserted requiring a seat license fee (as opposed to raising ticket prices) provided a tax benefit to Gamecock Club members.

4. Only Lee has appealed the trial court's judgment.

court, sitting non-jury, found that the Agreement was "unambiguous on its face" and further found that, even when required to pay the seat license fees, Lee retained the "opportunity to purchase tickets." As a result, the trial court held that the University complied with the terms of the Agreement and that Lee was required to pay the seat license fees in order to retain the opportunity to purchase season tickets to athletic events. Lee appealed, which we certified for review pursuant to Rule 204(b), SCACR.

## III.

"A suit for declaratory judgment is neither legal nor equitable, but is determined by the nature of the underlying issue." *Felts v. Richland Cnty.*, 303 S.C. 354, 356, 400 S.E.2d 781, 782 (1991). "An action for breach of contract is an action at law." *Electro Lab of Aiken, Inc. v. Sharp Constr. Co. of Sumter*, 357 S.C. 363, 367, 593 S.E.2d 170, 172 (Ct.App.2004) (citing *Auto Owners Ins. Co. v. Langford*, 330 S.C. 578, 581, 500 S.E.2d 496, 497 (Ct.App.1998)). Because the construction of a clear and unambiguous contract is a matter of law for the court, we review the trial court's findings of law *de novo*. *Watts v. Monarch Builders, Inc.*, 272 S.C. 517, 520, 252 S.E.2d 889, 891 (1979).

## IV.

" 'The law in this state regarding the construction and interpretation of contracts is well settled.' " *Progressive Max Ins. Co. v. Floating Caps, Inc.*, 405 S.C. 35, 46, 747 S.E.2d 178, 183 (2013) (quoting *ERIE Ins. Co. v. Winter Constr. Co.*, 393 S.C. 455, 461, 713 S.E.2d 318, 321 (Ct.App. 2011)). " 'In construing a contract, it is axiomatic that the main concern of the court is to ascertain and give effect to the intention of the parties.' " *Id.* at 46, 747 S.E.2d at 184 (quoting *D.A. Davis Constr. Co. v. Palmetto Props., Inc.*, 281 S.C. 415, 418, 315 S.E.2d 370, 372 (1984)). " 'Parties are governed by their outward expressions and the court is not at liberty to consider their secret intentions.' " *Id.* (quoting *Blakeley v. Rabon*, 266 S.C. 68, 73, 221 S.E.2d 767, 769 (1976)).

" 'If its language is plain, unambiguous, and capable of only one reasonable interpretation, no construction is re-

quired and the contract's language determines the instrument's force and effect.' " *Id.* (quoting *Ellie, Inc. v. Miccichi,* 358 S.C. 78, 93, 594 S.E.2d 485, 493 (Ct.App.2004)). Courts "are without authority to alter an unambiguous contract by construction or to make new contracts for the parties. A court must enforce an unambiguous contract according to its terms regardless of its wisdom or folly, apparent unreasonableness, or the parties' failure to guard their rights carefully." *S.C. Dep't. of Transp. v. M & T Enters. of Mt. Pleasant,* 379 S.C. 645, 655, 667 S.E.2d 7, 13 (Ct.App.2008) (citations omitted).

Applying these settled principles of contract interpretation, we agree with the trial court that the Agreement is unambiguous. However, we find legal error in the trial court's interpretation and conclude that the University breached the Agreement by requiring Lee to pay the additional seat license fee to retain the opportunity to purchase tickets. The Agreement reflects the agreed upon bargain between Lee and the University.

■ The language of the Agreement is clear. As long as Lee performs his contractual obligations, the University must provide him with the "opportunity to purchase" season tickets to University athletic events as described in the Agreement. The Agreement contains no limitations or conditions on this contractual right. Thus, by requiring Lee to pay the seat license fee before purchasing season tickets, the University has attempted to impose an additional term that the parties did not agree upon. This unilateral attempt to modify the Agreement is impermissible. *See* 17A Am.Jur.2d *Contracts* § 507 ("[O]ne party to a contract may not unilaterally alter its terms."). Indeed, "[o]nce [a] bargain is formed, and the obligations set, a contract may only be altered by mutual agreement and for further consideration." *Layman v. State,* 368 S.C. 631, 640, 630 S.E.2d 265, 269 (2006). We hold that the University and the Gamecock Club are required by the terms of the Agreement to permit Lee the opportunity to purchase tickets without being subject to any other conditions, including the payment of seat license fees.

We recognize the need for the University to increase its revenue streams, and we appreciate that the YES program (as

opposed to increasing ticket prices) is an effort to provide ticketholders with certain tax benefits. Indeed, the University would be permitted under the Agreement to increase ticket prices. However, the clear and unambiguous language of the Agreement prohibits the University from imposing additional fees that Lee must pay before being allowed the opportunity to purchase tickets. Were we to accept the University's view of the Agreement, it would mean Lee received little or nothing in the bargain, for the University would always have the ability to demand additional consideration for the opportunity to purchase tickets. That is the very thing foreclosed by the Agreement.

## V.

We conclude that the Agreement unambiguously prohibits the University from requiring Lee to pay the seat license fee as a prerequisite for the opportunity to purchase tickets pursuant to the Agreement. We reverse the decision of the trial court and remand for entry of judgment for Lee.

**REVERSED AND REMANDED.**

TOAL, C.J., BEATTY and HEARN, JJ., concur.
PLEICONES, J., dissenting in a separate opinion.

Justice PLEICONES.

I respectfully dissent and would affirm the circuit court's ruling that Respondents did not breach the contract.

I find that the trial court was correct in its construction of this contract. I agree with the circuit court, and the majority, that this contract is unambiguous on its face. Looking to the plain language, it provides that Lee would be a "Lifetime Full Scholarship Member" with "the opportunity to purchase tickets." Lee has received exactly what he bargained for. He is both a Lifetime Full Scholarship member and that he has the opportunity to purchase tickets just as any other person with this status. Accordingly, I agree with the circuit court that the University did not breach the contract.

As the majority states, "we are without the authority to alter an unambiguous contract by construction." *S.C. Dept. of Transp. v. M & T Enters. of Mt. Pleasant*, 379 S.C. 645, 655,

520

667 S.E.2d 7, 13 (Ct.App.2008). Despite acknowledging this principle, the majority states that the language of this contract "prohibits the University from imposing additional fees." I am unable to find any language prohibiting additional fees. Further, the majority acknowledges that a court must enforce an unambiguous contract regardless of its wisdom, folly, apparent unreasonableness, or the parties' failure to guard their rights carefully. *Id.* Despite acknowledging this principle, the majority finds that under the circuit court's reading of the contract, Lee receives "little or nothing in the bargain." I disagree with the notion that Lee received nothing. As he concedes, he is a Lifetime Scholarship Member, with all its attendant benefits, and he has opportunity to purchase tickets in the same manner as everyone else at that level.

Accordingly, I dissent and would affirm the circuit court's order finding that the University did not breach this unambiguous contract.